22-1967 Shelley Ellison v. USPS Good morning. May it please the court. The issue in this case is whether Ms. Ellison has been denied meaningful access to the benefits of the programs of the USPS because she is in a wheelchair and cannot access the Shelbyville post office that has no ramp. The district court found that she had meaningful access in ways other than physically entering the Shelbyville post office. However, this is erroneous. The uncontested evidence in this case demonstrates that the only way she can obtain this meaningful access is if the postal service builds the ramp it had promised to build and the district court should be reversed and the case remanded back for summary judgment for Ms. Ellison. Now, the district court held that she had this access required by 504 because she could use the postal services website and she and her organization could use post office boxes at very small towns that had post offices outside of Shelbyville. But the evidence demonstrates the obvious, which is that the website does not provide services comparable to those in person at the post office. There's no way to determine such things as the weight of a package, what class of mail to use, or what sort of insurance to buy. Now, the postal service will send you packaging. It may take a week or so to get the actual packaging. Then you have to assemble it and you still have to figure out what postage to add to it and how much it weighs, etc. And even then, you have to take it to the post office because they won't pick up a package that's more than 10 ounces, understandably. And while it's true that there are three small town post offices in other towns that have accessible post office boxes, the district court made no findings that these out of Shelbyville post offices had comparable services and in fact rejected our motion, which was not opposed by the postal service, to supplement the evidence to show precisely that. That request to supplement, though, came a year, did it not, after discovery had closed? Yes, Your Honor. It came after a call with the judge, with counsel, where he indicated that he wished to have further information about those post offices. And he specifically asked during the call whether we knew if they provided comparable services. And as we note in docket 47, my co-counsel, Ms. Pachter, had actually been to one of those posts, all those three post offices, excuse me, and said something, but we obviously felt it was appropriate to supplement that with an affidavit from someone other than counsel. The only point of my observation is that it's hard to see that as an abuse of discretion on the district court's part not to accept a filing like that. I agree completely. And we have not argued that it is, because what the district court said was, I don't care about those other post offices except insofar as they have post office boxes. So we are not arguing it should be reversed on that grounds. We are just saying the court had the evidence if it wanted to, but it understandably did not use it because it said we're only looking at the post office boxes. But that does raise an issue. These towns are between 15 and 22 miles round trip from Ms. Ellison's home. And the idea of requiring a disabled person to leave their home community to get a service, which is right around the corner for non-disabled persons, imposing that sort of temporal and other burden on them is no different than putting a physical barrier in front of a disabled person and saying, it's okay, you can take the securities route that no one else has to take. It's not the even handed treatment, which the Supreme Court has held 504 demands. Mr. Falk, is it the contention of Ms. Ellison that the central question here in this case in particular, is that for them or the postal service be able to give her meaningful access, they would have to build a ramp to the front of the Shelbyville post office. They would have to build a ramp that made it accessible right there. And that would be in the front. And that's exactly what they said they were going to do. Remember, the post office contacted the state of Indiana, an architect from the post office, along with a private architect saying that the postal service is planning to install an ABA, Architectural Barriers Act, accessible ramp. It didn't say we're thinking about it. It didn't say we're looking into it. It said we're planning to do it, but for whatever reason, they did not do it. Instead, the post office had said to Ms. Ellison as an accommodation, we'll bring you the post office box mail mixed in with your regular mail. And while that may not be an ideal way to get your mail, it does nothing to get Ms. Ellison into the post office where she can actually visualize and get personal service and see what's there. Can you explain, Mr. Falk, why she cannot, she can go to the back door and wait, as I understand it. Why is she unable to go inside? I believe, and- Or should I ask Mr. Wood? I mean, I can tell you what the post office has to say, and I don't know if this is in the record. That is a private space. And I think it's the position of the postal service that they cannot let people in that back door. Okay, well, or they might face a lawsuit here. But is the Shelbyville Post Office accessible to employees who need to use a wheelchair? I assume they have to go up that ramp. And that ramp is a ramp built originally for freight, and it still is. In fact, when it was being discussed being used for people, the then postmaster said it's really dangerous to have people out there because obviously we're moving back and forth. And Ms. Ellison's experience has been that she had gone to the post office. There's one accessible space. Because of all the trucks there, she actually was blocked into her car. She could not get out of her car. And the way the buzzer is set up, the buzzer is at the top of the ramp or at the front of where your car would be, at the wall. So you physically have to get out of your car even to ring the buzzer. And at that point, you have to hope that someone comes out. And you have to hope that they're able to serve you and you have to give them your charge card and your pin. And you never get to see the inside of the post office. Not surprisingly, the district court found that the court had doubts that this satisfied 504. And not surprisingly, Ms. Ellison doesn't go to the post office. She goes to a private company in Shelbyville that she estimates is three times more expensive, but at least she has access and she can see someone. Speaking of private companies, did you comment on how the solution of going to the next town over would apply, let's say, to a similar challenge to limited accessibility to UPS or FedEx or McDonald's? Well, sure. I think that would be under Title III of the ADA, where there is more leniency in considering things like fundamental alterations and what have you. I think it's interesting you mentioned something like McDonald's. You go to McDonald's, you go inside, you go through the drive-through, you get your food. The thing about the postal service, as we all know from our personal experience, when we go to the post office, generally, we're going there for service. We have a package. We have no idea. You think McDonald's can say, if you're in a wheelchair, you have to go through a drive-through? No. Can you come inside? Not at all. No. Under Title III, I think- Or you have to drive a county over to the next town? No, not at all. Absolutely not. I did not mean to undermine the Title III of the ADA, but what I'm pointing out here is that it's even more problematic here because the service we're talking about is more than, a better example is Amazon, is more than, I get this piece of equipment at Kroger, I get it at Amazon, it makes no difference. You go to the post office for the service, and Ms. Ellison cannot do that. She simply cannot do that. Why doesn't the totality of it, although, add up to be, yes, there's no question that she can't access it as she wishes in Shelbyville, but when you consider the totality of what is available, including the post offices in the neighboring towns, the ability to do online business, they dropped the PO box off at our house. Why isn't that enough to satisfy the standard? How is Ms. Ellison going to send a package? Drive four more minutes to the neighboring town? No, Your Honor. Go inside the post office and take your package? No, Your Honor. In fact, number one, the district court specifically said it wasn't looking at what those other post offices served, and number two, if you- Hold on. Okay. All right. There's no question that in the three neighboring towns, that they do have counters with lobbies and services that are offered by a postal employee. It's very difficult for me to fathom that if there is a lobby and a window open, that you can't take a package to that window and mail it. Again, this is not considered by the district court. It's in the record at 47-1. It's the declaration done by someone from Anne D'Angelo, who went and looked at the post office. In two of them, the two closest to Ms. Ellison, there was not packaging available. And the third one at Fairland, which I think was the furthest away, there was a limited amount of packaging. And of course, these post offices are open less hours. One of them is only open in the morning. So it is a burden. And it is, as I said, it's between 15 and 21- What, in your view, as a matter of law, is the degree of the burden, the degree of the inconvenience that the statute permits? Because we know it permits some. I think the question, and I think you indicated, the question is totality. Is there a denial of meaningful access? And if, in fact, Ms. Ellison is not able to pick up something and drive to the nearby post office, enter the post office and mail it a package and get the advice of postal employees, I think that is a denial of meaningful access. And when you combine that with the fact that these other post offices are between, as I said, 15 and 21 miles, round trip from her home in tiny towns, the largest is, I think, 804 population, that she would never, ever go to- You have to look at the delta though, right? The difference, because she already drives some distance or she was driving some distance to Shelbyville, to the Shelbyville post office. A little bit more than five miles, I believe. Okay. And so then you have to look at, well, what's the additional travel she'd have to undertake? Except Shelbyville's her home. Shelbyville is where she runs errands. Shelbyville is where she is. You're telling a disabled person, look, you have to go out of your home. You have to spend whatever long it takes to go the 15 to 22 miles. You have to figure out when the post office is open. You have to see if their services are any way comparable. And I do not believe they are. And then you have to leave your town. And I think that is more, I think the second circuit talked about a de minimis temporal burden. That is more than de minimis. And that's not something that, that's anathema to 504. 504 requires even-handed treatment, and that's not close. I wanted to take a minute, Mr. Falk, and look at the briefing here. So the court assumed or accepted the proposed, I believe, declaration. The footnote you directed us to, the evidence only established certain retail services, going back to Judge Scudder's point, as to the services that were provided. Was there a distinction of the services that she would have received at the location that was not accessible at those other locations? It's my understanding, and again, I have not been to the other locations, but it's my understanding that Shelbyville Post Office has a uniquely large number of packaging options, both the post office-type packages as well as holiday-themed packaging. It has gift cards. It has greeting cards. It has the ability to purchase various items, scales, I think. It has everything that most of us look for when we go helplessly to a post office with something to mail because we have no idea what we're doing. And that is something that now Ms. Ellison pays three times as much for by going to a private space because she cannot get into the post office. And again, the post office said it was going to build a ramp. We're not dealing with impossibility here. We're not dealing with a lack of proportionality, which is required for us to demonstrate our prima facie case to show a reasonable accommodation. They said they were going to build the ramp, and they didn't build the ramp. And I think we have to remember, we're in 1923. The Architectural Barriers Act was in 1968. The Rehabilitation Act was in 1973. The ADA was in the 1990s. We shouldn't be here today talking about a ramp. Build the ramp. And again, as we note in our briefing, I understand the post office says they could not do it. Shelbyville offered to pay for the ramp. Is it your position, Mr. Falk, that all 34,000 postal service facilities need to be wheelchair accessible? No, Your Honor. It's my position that we have to look at each case to see if there's meaningful access. One could certainly theorize a situation where there might be meaningful access with something more closely proximate in your neighborhood to neighborhood post offices. One could foresee that. I would dare say, however, given that the ADA was in effect in 1968 and applies not just to new building but to improvements or rental of property, there are probably very few post offices now that are not accessible. There are some. They have to be accessible for employees. They have to be accessible for employees, and you would think the post office would not want their employees to suffer the danger of going in through a freight entrance. Thank you. Okay, very well. We'll give you some rebuttal time, Mr. Wood. Good afternoon. Your Honor, may it please the Court, Bob Wood on behalf of the United States Postal Service. If I may, a couple of points of record clarification, and I think there's some room for disagreement on some of these things. The Postal Service did not promise to build a ramp. It would be difficult to characterize that as a promise given that DLZ's characterization of this as a plan came six months after the filing of the lawsuit and was part of an effort not to build the ramp. So even though they use the word planning, which is, I think, the architectural language that they were using to prompt the historical study, characterizing this as a promise when it was part of the litigation and regulatory effort not to build the ramp in the first place, and we can get to the questions of build the ramp or don't build the ramp when Ken said build that ramp. I was afraid that the whole place was going to erupt into a chance to build the ramp. And I understand the nature of that desire. And then also on the record, weighing and postage packaging of certain types are all available at the other post office locations. However much farther away they are in minutes. Hold on. Hold on. I thought Mr. Falk's point is that as a matter of record evidence, what we know is we know that the three neighboring towns have post offices. We know that those post offices have counters that are open to customers. But we don't know a lot beyond that. Right. What retail means we don't know. But all I meant by that, and I think he said this as well, is that at Fairland, which is not proximal compared to the other locations, there is some retail packaging and tape and some things available at that one. What retail means with packaging at the other two. I can't say he can't say that's not part of the record. If the Postal Service were to build a ramp here, would they have to use GSA to do it? I believe the answer is correct. Yes, but I don't know. I can't say for sure. But can I ask you, you got 34,000 facilities, you tell us how many of them are not wheelchair accessible to employees? It's not in the record, but I think they are all accessible to employees. How many are not accessible to customers? I wouldn't want to venture a guess. That is the closest thing in the record to that is in the Mr. Del Hierro's deposition, he talks about there are all these issues the post office is facing at all these facilities, and we only have funds for emergencies. That's the closest to national budgetary concerns the record. So the defense here, in essence, you go to the drive-thru window, or we'll come pick you up, you can go to these other towns. Your office enforces the ADA against private businesses, right? Would those defenses be accepted from UPS or FedEx if they said, our main office in the county is not accessible, but you can go to these other places? Without wanting to speak to future litigation, I don't think I've, I think mostly those cases in our office have settled in favor of accessibility. Because that's what the ADA requires. Sure. And to that point, this is not a, this is what would be under the ADA, an existing facility case. It's a non-Barriers Act case. The standards are different. Program access is the standard. There are cases out of the Fifth Circuit and the, I'll think of it, it might be the Ninth Circuit that say to force facilities access in a case like this would render null the program access. The Ninth Circuit case is the one about San Francisco parks, right? And then there's the football bleachers. The football bleachers. But I take it, you would not argue that adequate football access would be, well, you can go to the away games. You can keep the home field inaccessible, but you can go to the away game. Well, in that sense, the school that would be on the bottom of the caption wouldn't even be the one providing access in that sense, right? It would be the other school system. Different high schools in the same system. Sure. Yeah. Fair enough. Okay. Would a school, under the Rehab Act, could a school say, we're just going to have one of our schools in town be accessible, and we're going to make all the kids who have wheelchairs go to that school? I can't imagine. I can't imagine. I think one of the limitations here, and Mr. Falk spoke to this, is because of lease turnovers, other structural changes that have happened, there are so few facilities left that would fall under this existing facility ADA standard or non-ABA federal facility standard, that there just aren't a lot of cases on this subject. And the question of whether a school system could do that, I think any school system, before getting to the final answer on the absolute hypothetical, I think any school system will have made sufficient changes that those program access standards won't apply. Technical compliance, physical facilities access standards will apply. So it would be a different law. If you had, strictly speaking, a school system where they had made no structural changes since 1968, or I guess 1992, it would come down to the nature and degree of the burden placed on the student. Okay. So let's go there. If we were to say this access is good enough to comply with the Rehabilitation Act, where do you think it would become intolerable, unacceptable? If the driving time were 20 minutes longer, 30 minutes, would it matter whether we're talking about Greenwich Village or Montana? I think, and I, you know, I alluded to that at the Postal Service's brief, I think that that would require a record on what average times are for non, for people who do not require a wheelchair specifically in the United States to see what uniform standards there are in terms of people's expectations for service from the Postal Service. There's the initial check of, does this seem right? I take your Honor's point there. I wouldn't want to give a fulsome answer on behalf of the Postal Service without understanding what some people in places like rural Montana or, I mean, really anywhere in the West, or maybe the rural South might expect from the Postal Service, who are, to be clear, persons without disabilities. Mr. Wood, can you, there's one aspect of the litigation that I wondered about, and that was the point that, the point that the Postal Service is taking is that given the totality of the access available through these other measures, including the three other locations, that that suffices for purposes of access to the programs and the services that the Postal Service offers. And, of course, that's being balanced against the cost of installing a ramp. The Postal Service, as I understand it, took the position in the whatever cost estimate it received was confidential and subject to work product protection. Why, why would the Post Office take that position? I, why wouldn't the Post Office be trans, is transparent as it possibly could be with the cost estimate and say, well, send you a copy? Where do you want me to send it to? So, what I can say is what's in the record about that. I joined this case for appeal purposes, but the, that work product privilege was asserted with respect to settlement negotiations. Oh, I got that. But there's a, there's an aspect of this where the Post Office has some idea of what it would cost to install a ramp. And the reason, I'm not trying to draw it out of you here. I know that we're not litigating work product protection. I got that. But it would seem to me that the, it could come in a pretty minimal cost, or it could come in a much more significant cost. Part of it depends upon how much work you want to do to the exterior of that building, or do you just want to bring in a more temporary, but safe ramp for people to access just on the side of the stairs? What I would say. I don't understand that, I don't understand that it's confidential point at all. I think that it, my understanding of this is that the work product privilege was asserted and was never, and has yet to be relinquished. But that, that, if that went to, if this matter went to trial, costs as Van de Zand says, come in twice. So you have to have evidence. I mean, I don't know if you even get to an undue hardship defense on a Rehab Act case necessarily, but costs are central to the evidence under Lane, under any assessment of the regulation, the Rehab Act regulations. So those costs would have to be part of a trial. And the post office has a lot of experience with putting ramps in, tons of experience. It's just a very odd litigating position to me. And it is the case, I think that if the, you know, because we don't know, let's say it is a less expensive than the rear ramp refurbishment, that might suggest one result. If it's far more expensive and you take into account the fact that the, understandably for Ms. Ellison, this is a Shelbyville case for the postal service. Just as understandably, this is however many non ABA, no ramp offices there are. Let's also understand that it's also not just about Ms. Ellison, right? Of course. We've got the check. The CDC says about 11% of adults have serious difficulty walking or with stairs. It's 25 million postal customers. The cost question would have to be part of a trial, regardless of any desire for confidentiality. I can't imagine a trial. Presumably discovery would have to be reopened for that. Yes. And the postal service maintains that it would be relevant at two stages, not just at the affirmative defense stage. On the back door option, is the back door sheltered from weather? It, from the photographs, I know there was some discussion of weather exposure prior. It's not sheltered from the cold. I think it's sheltered from precipitation, but it can get quite cold. Yes. And you think you think you can get out from the rain there. I've got to say that this has a clear flavor of Jim Crow applied to folks with wheelchairs. There's weight at the back door for us to come in response. I understand that the Shelbyville post office folks may be doing the best they can given the national funding priorities and so on, but sense of discrimination, which, by the way, is the standard is one of the statutory standards, meaningful access is a passing phrase for this report. Very different context. I'm very troubled by it. And what I can say in response to that is that the postal service use its alternate locations as the primary means of accessibility in this case. And I, okay, believe me that I understand. I understand the district court wasn't too overwhelmed by the back ramp. No. And, but one thing that this is another record clarification issue. My understanding of the safety concern relates to the, when there was, and I may be wrong about this, but it was when there was just one buzzer and the buzzer put a person in a place where they could get hit by the door on exit. And that's why a second buzzer was added to avoid that buzzer is not an ideal location either, but it was, that was part of the effort to become, because the rear of the building is subject to the architectural barriers act and to become compliant, come into compliance with that. The buzzer was moved. Is there a distinction? I'm sorry. Is there a distinction between meaningful access and equal access? Well, Corolla would certainly say there is as an example, the ninth circuits case saying that numerous marquee attractions in San Francisco's, you know, most iconic park are not wholly non-accessible, but the program access standard was met by the city in that case. And that's clearly not equal access. So some, there would have to be some substantial distinction. About that third option, the website. It was a little dangerous to me to set the precedent. Justin, the postal service does not take the position in this case that the website is sufficient on its own. It is more robust, I think, than has been characterized. The first class mail is available through cook and ship. There are, there are, I think the only thing that Ms. Ellison, if you took a holistic view of what is available to her and you stripped off stripped out burdens, and I get the burdens are essential. It's gift cards. If cards are not available on the website, they're not available. There seems to be no way. However, you read the record that they're available at the smaller post offices, greeting cards, certain envelopes. There are gifts on the website. There's everything else like that. But the website alone is not, that's not the litigating position with that rest of my briefs. Thank you. Okay. Very well, Mr. Wood, Mr. Falk, why don't you take, we'll give you a minute on rebuttal. Thank you. Round it up. Thank you. Oh, no, you had a minute 32. We'll give you two. Speaking of rounding your honor, if we look at the other post offices, the closest one to Ms. Ellison is the Waldron post office, which is 15.4 miles round trip. It's open 32 hours a week, as opposed to the Shelbyville, which is open. There's a dispute either 45 or 47.5. Manila post office, which is 18.4 miles round trip is open 22 hours a week. The post office in Fairland, which is the furthest away, almost 22 miles, 10.9 miles one way is open 41.5 hours. So there's not this equality of service. I think the meaningful access standard allows an entity to apportion services, get this from here, get this from here, get this from here. It's not ideal, but you still have to add up to meaningful access. And the problem here is that when you look at the website, you look at the ramp and you look at the post office boxes, whether it's delivered to your home or going to these out of town post offices, you don't get close to meaningful access. You don't get close to the experience that Ms. Ellison now is paying three times for by going to a private company where she can wheel in, get advice, get a package and deal with it that way. And I think all of us see the post office providing that service. And the post office said in a statement to the state of Indiana, we are planning to install this ramp. And I don't think it can back away from that now. And it certainly never argued in the district court. It never raised an undue burden defense and it can't, and it would be silly to raise an undue burden defense despite its financial problems. It did make have revenue of $73.1 billion in 2020. It's time to build the ramp. Thank you all. Thanks to you, Mr. Wood. Um, thanks to you as well, or we'll take the case under advisement. We'll move to our final argument of the morning.